114 F.3d 1191
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Vasile CRISAN and Ileana Crisan, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-3391.
 United States Court of Appeals, Seventh Circuit.
 Argued April 29, 1997.
Decided May 8, 1997.
 
 Before BAUER, EASTERBROOK and KANNE, Circuit Judges.
 
 Order
 
 1
 Vasile and Ileana Crisan, citizens of Romania, came to the United States as tourists in 1990 and overstayed their visas. In 1991 they applied for asylum; the application was denied in 1992. In 1993 the INS commenced deportation proceedings against the Crisans, who conceded deportability but applied for asylum a second time. Again the application was denied, and we have a petition for review of the decision of the Board of Immigration Appeals affirming the final order of deportation in 1996.
 
 
 2
 Petitioners contend that they were persecuted in Romania because they are practicing Pentecostals. They concede that Romania does not now persecute Pentecostals, but they contend that the persecution they encountered before they left in 1990 entitles them to remain in the United States. Yet as we have stressed in Bucur v. INS, 109 F.3d 399 (7th Cir.1997), and other recent cases, only a showing of serious past persecution--more severe than the kinds of discrimination that ethnic and religious minorities encounter the world around--supports asylum when there is no prospect of future persecution. See also 8 C.F.R. § 208.13(b)(1)(ii) ("compelling reasons"). The BIA concluded that the Crisans have not established this sort of persecution, and its finding is not clearly erroneous.
 
 
 3
 The Crisans narrate a tale of religious intolerance that has counterparts even within the United States, such as ridicule in the workplace for having unusual beliefs. They also attest to the kinds of imposition common in communist regimes. For example, Vasile Crisan's father, a bricklayer, was forced to "volunteer" to help erect a government building, spending four months of labor for minimal compensation; Ileana Crisan's brother was falsely accused of "disturbing the peace" and compelled to work for a year at 20% of his regular wages; Vasile Crisan lost promotion opportunities when he refused to create red flags for a communist celebration. These events, many of which concerned family members other than the petitioners, fall well short of the "persecution" that entitles an alien to avoid deportation.
 
 
 4
 AFFIRMED.